IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:17cr434-MHT |
| | ) | (WO) |
| KENNETH LESTER BAXLEY | ) | |

OPINION AND ORDER

Defendant Kenneth Lester Baxley has pled guilty to one count of escape. *See* 18 U.S.C. § 751(a). This case is currently before the court on the government's motion for an inpatient psychiatric examination of Baxley by the Bureau of Prisons (BOP) for the purpose of sentencing. For the reasons that follow, the motion will be denied.

I. Background

In May 2017, after serving 183 months of a 189-month sentence for being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g), Baxley was transferred from BOP custody to Dismas Charities Halfway House, a residential re-entry center in Montgomery, Alabama, for the final six

months of his sentence. For four months he resided at the re-entry center with no issues. On September 12, 2017, he received a pass to spend the upcoming weekend with family. However, unlike several prior instances in which Baxley had received weekend passes, he did not return to the center at the expiration of the pass. He was apprehended four days later. He was charged with and subsequently pled guilty to one count of escape. *See* 18 U.S.C. § 751(a).

In preparation for his sentencing, Baxley filed a motion for a downward departure, or, in the alternative, a variance, based in part on his contention that his mental illness contributed to his offense conduct. According to a psychological report done by Dr. Catherine L. Boyer and commissioned by the defense, Baxley was severely physically and emotionally abused by his father in his youth. *See* Boyer Report (doc. no. 33-1) at 1-2. More recently, in 2012, while in the custody of the BOP, he was knocked unconscious and repeatedly sodomized with a broom stick. *See id.* at 2. After the sexual assault,

the report explains, he began suffering from paranoia, anxiety, and depression. He described living in constant fear of his safety while in prison, which caused him to sabotage his near-spotless disciplinary record at the BOP by acting out in an effort to be placed in segregation. When he sought treatment, BOP clinicians diagnosed him with Post-Traumatic Stress Disorder and prescribed medication to treat the depression related to his trauma. *See id.* at 3. Baxley received some relief from his medication, which he took regularly in prison until his eventual discharge. After arriving at the re-entry center, however, he was forced to go without his medication for some time while awaiting approval to receive it. *See id.* At the center--according to the psychological evaluation and a letter Baxley submitted to the court--he was assigned to work the night shift at Koch Foods, which included working with machinery. Concerned that the sedation he experienced from the medication would prevent him from being sufficiently alert and focused to do his job, he decided to stop taking

3

his medication. *See id.* at 4; Statement from Kenneth Lester Baxley (doc. no. 39).[1] It was during this period, while he was off his medication, that Baxley committed the offense conduct. Boyer found that Baxley was suffering at that time from severe Post-Traumatic Stress Disorder, which "undoubtedly contributed to his failure to return to Dismas after his [home] pass." Boyer Report (doc. no. 33-1) at 6.

In response to Boyer's report, the government moved for its own psychiatric evaluation, to be conducted at a BOP facility. The government argued that if the court intends to rely on Boyer's report in fashioning a sentence, the government should be allowed to obtain its own psychological evaluation to present as rebuttal evidence. However, instead of acquiring a local

---

1. The defendant submitted a letter to the court describing the circumstances that led to the instant conviction. In the letter, he described how he "completely fell apart" at the BOP, and acknowledged his need for mental health treatment, saying, "I know I'll need mental health help the rest of my life and will seek it cause [sic] I want to enjoy the rest of my life." Statement from Kenneth Lester Baxley (doc. no. 39).

evaluation as the defense did, the government requested an order of the court requiring Baxley to submit to a longitudinal, inpatient psychiatric examination at a BOP facility--a facility that would be substantially distant from the current venue of these proceedings, that is, the Middle District of Alabama. The government explained that the evaluation should be done at the BOP because a longitudinal analysis would be more comprehensive, because such analysis would allow the expert to develop rapport with the defendant, and because of the expertise and experience of the BOP staff. Baxley objected to having the examination conducted at a BOP facility, but did not object to submitting to a psychiatric evaluation locally by an expert selected by the government.

## II. Analysis

A sentencing court has authority, under 18 U.S.C. § 3552(b), to order a study of a convicted defendant when it "desires more information than is otherwise available to it as a basis for determining the

sentence to be imposed." Studies ordered pursuant to § 3552(b) are to be conducted in the local community, unless at least one of two conditions are met. The statute provides: "*The study shall be conducted in the local community* by qualified consultants *unless* the sentencing judge finds that there is a compelling reason for the study to be done by the Bureau of Prisons or there are no adequate professional resources available in the local community to perform the study." 18 U.S.C. § 3552(b) (emphasis added).

Therefore, for a court to order an evaluation pursuant to § 3552(b), it must (1) desire more information than is otherwise available to it and (2) order the evaluation to be conducted locally, unless (a) there is a compelling reason for the study to be done by BOP or (b) there are no adequate professional resources available in the local community to perform the study.

This court has previously discussed certain circumstances under which a sentencing judge could reasonably "desire more information" and order

a § 3552(b) study. In particular, this court has held that where there is a reasonable basis to believe that a defendant's drug addiction or mental disease or defect contributed to the conduct underlying his or her conviction, the court should order a mental-health evaluation pursuant to § 3552(b) to help determine (1) how a defendant's mental disorder(s) might, for sentencing purposes, mitigate his or her *culpability* for the offense conduct; and (2) what type of *treatment*, if any, the defendant should receive during supervised release. *See United States v. Kimbrough,* No. 2:07cr260, 2018 WL 989541 (M.D. Ala. Feb. 20, 2018); *see also United States v. Mosley,* 277 F. Supp. 3d 1294 (M.D. Ala. 2017) (discussing the issue of substance-abuse disorders in further detail).

In *Mosley*, the court on its own ordered an evaluation under § 3552(b) because it wanted, for sentencing purposes, specific information that would be best addressed by a comprehensive, longitudinal evaluation. Because the court found that there were no adequate

7

professional resources available locally to conduct such an evaluation in the jail where Mosley was housed, and because Mosley presented too high a risk of relapse to be released into the community for the evaluation, the court sent Mosley to the BOP for a presentence study of his mental health. *See id.* at 1297-1300. Thus, in *Mosley*, both of the conditions for an inpatient study under § 3552(b) were present: (1) the court desired more information, and (2) there was a compelling reason for the study to be conducted by the BOP, and/or locally available professional resources were not adequate. With regard to the second condition, the court found that both circumstances were present, although either would have been sufficient under the statute.

In this case, the first question is whether the government has convinced the court that it needs more information about Baxley than is otherwise available prior to making a sentencing determination. *See* 18 U.S.C. § 3552(b). Because Baxley contends he was suffering from a mental illness at the time of the

8

offense, his case presents a situation in which--ordinarily--the court could reasonably "desire more information." *Id.*

However, because the record is clear that Baxley suffers from PTSD,[2] and it is obvious from his conduct--even to the untrained eye--that he is troubled, it is not clear why a presentence psychological evaluation is necessary. The issues in this case are not complicated. Baxley's offense conduct alone suggests he acted most irrationally, in that he acted so clearly against his self-interest: after serving all but two months of a more than 15-year prison sentence, he jeopardized his long-awaited release by failing to return to the residential re-entry center. No reasonable person would do such a thing. Even absent a psychological report, common sense dictates something must be awry.

---

2. The presentence report submitted by the U.S. Probation Office, Baxley's letter to the court, and the on-the-record representations of defense counsel all confirm that the BOP diagnosed Baxley with PTSD in 2012 following his victimization at BOP, and that the BOP subsequently prescribed him medication for depression.

Moreover, despite the government's argument that it should be provided an opportunity to present psychological evidence to rebut Dr. Boyer's report, it would not be prejudiced by not having such an opportunity. In another case where, as here, the defendant sought a variance based on a psychological report commissioned by the defense, this court found granting the government's request for an evaluation to be in the interest of fairness, as it provided to the government "the opportunity to add to the evidence so that it adequately reflect[ed] the positions of both sides." *United States v. Reinier Perez-Rives*, No. 2:17cr38-MHT, 2018 WL 1315450, at *3 (M.D. Ala. Mar. 14, 2018) (Thompson, J.). However, in the instant case, the psychological report adds little to nothing. Dr. Boyer administered only one clinical assessment, and she concluded that the results were not valid. *See* Boyer Report (doc. no. 31-1) at 5. She did not provide any diagnoses. *Id.* Rather, she essentially parroted Baxley's description of his life--a description that has

been provided to the court in the presentence report by the U.S. Probation Office, as well as submitted by Baxley himself. *See id.* at 1-4; Statement from Kenneth Lester Baxley (doc. no. 39). The only reliable conclusion that can be drawn from Boyer's report is that Baxley needs ongoing mental-health treatment. Again, the facts of this case alone--that is, the totally irrational behavior of abandoning a 189-month sentence after already serving 187 months--lend to that conclusion.

Further, ordering an additional evaluation would significantly delay the instant proceedings, potentially to Baxley's prejudice. Baxley was apprehended on September 22, 2017, and there is no evidence that he committed any crimes or otherwise participated in illicit behavior while on escape status. He completed his felon in possession sentence in jail--rather than at the residential re-entry center--in November 2017. He has now spent an additional four months incarcerated pending the resolution of the escape charge. Defense counsel has made a credible motion for a downward variance to time

11

served, which would be, as of today, a sentence of roughly four months imprisonment. Granting the government's motion would require sending Baxley away for an evaluation--a process that would likely take several months. Thus, should the court decide Baxley's motion for a variance has merit, ordering an evaluation now would result in Baxley's incarceration for several months beyond what would have been necessary for punishment.

For those reasons, it is in the interest of both Baxley and the government to proceed efficiently toward sentencing. In fairness to the government, the court will not rely on Dr. Boyer's marginal report in fashioning a sentence. Baxley is not prejudiced by the exclusion of Boyer's report because the report is, at best, cumulative. Instead, the court will order a comprehensive evaluation of Baxley upon his release in order to diagnose him, prescribe any necessary medication, and recommend treatment.

Given that the issues in this case are evident from the record and uncomplicated, the court sees no benefit

in ordering a presentence psychological evaluation, much less an inpatient evaluation. Because the court does not "desire more information than is otherwise available to it," the conditions for ordering a psychological evaluation under 18 U.S.C. § 3552(b) have not been met.

***

Accordingly, because the court does not "desire more information," and in the interest of fairness and efficiency, it is ORDERED that the government's motion for a psychiatric examination (doc. no. 37) is denied.

DONE, this the 28th day of March, 2018.

                                     /s/ Myron H. Thompson
                                   **UNITED STATES DISTRICT JUDGE**